```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x  06 cv 6435 (RJH)

JOSEPH BARTFIELD,                     :  ECF CASE

            Plaintiff,                :  COMPLAINT

       -versus-                       :

JAMES B. MURPHY, J. B. MURPHY         :
ASSOCIATES LLC, STANDARD SECURITY
LIFE INSURANCE COMPANY OF NEW YORK    :
and CFE MANAGEMENT LLC,
                                      :
            Defendants.
                                      :
- - - - - - - - - - - - - - - - - - -x
```

Plaintiff Joseph Bartfield ("Bartfield"), by his attorney, John M. Burns, III, complaining of defendants James B. Murphy ("Murphy"), J. B. Murphy Associates, LLC ("Murphy Associates") Standard Security Life Insurance Company of New York ("Standard") and CFE Management LLC ("CFE"), alleges as follows:

## AS AND FOR A CLAIM FOR RELIEF AGAINST MURPHY AND CFE

1. This claim seeks dissolution of CFE pursuant to § 702 of the New York Limited Liability Law.

## THE PARTIES

2. Bartfield is an individual and citizen of the State of Florida who possesses expertise in acting as managing general underwriter ("Managing General Underwriter") for insurance carriers engaged in the business of medical stop-loss insurance.

3. Murphy is an individual and citizen of the State of New

1

York who possesses expertise in acting as Managing General Underwriter for insurance carriers engaged in the business of medical stop-loss insurance.

    4. CFE is, and at all times relevant hereto was, a limited liability company duly organized on November 9, 1999, at all relevant times since then existing pursuant to the laws of the State of New York and, until such business was discontinued, conducting its business of acting as a Managing General Underwriter marketing and administering medical stop-loss insurance in New York to employers who indemnify their employees against medical expenses.

    5. From the formation of CFE up to and including the present time, Bartfield and Murphy have been, and they remain, the sole members of CFE, each at all times owning a 50% interest in CFE.

    6. CFE is sued herein to afford it notice of its pending dissolution; the actual case and controversy exists between Bartfield and Murphy.

JURISDICTION

    7. This Court has subject matter jurisdiction over each claim of this complaint pursuant to 28 U.S.C. § 1132 because Bartfield is a citizen of the State of Florida, each defendant is a citizen of the State of New York and each matter in controversy exceeds $75,000 exclusive of interest and costs.

8.  This Court also has jurisdiction over this first claim pendant upon plaintiff's second claim.

VENUE

9.  Venue is proper in this District because defendants each reside in this District and the occurrences complained of herein occurred in this District.

CFE'S OPERATING AGREEMENT

10.  Murphy and Bartfield executed CFE's written Operating Agreement under date of February 8, 2000 which provided, <u>inter alia</u>, that

> "7.  Management of the Company [CFE] is vested in all the Members who shall also serve as Operating Managers of the Company" (the "Unanimity Requirement"); and

> "8.  Members may voluntarily withdraw upon written notice.  The remaining Member(s) has the right of first refusal to purchase the withdrawing member's interest."

11.  Paragraphs 7 and 8 of CFE's Operating Agreement were never altered or amended and remain, and at all times after February 8, 2000 remained, in full force and effect.

12.  Neither CFE's articles of organization nor its Operating Agreement contained any provision respecting dissolution of CFE or termination of its business.

DESIRABILITY OF DISSOLUTION

13.  It is not reasonably practicable for CFE to carry on

its business in conformity with its articles of organization and its operating agreement.

14.  CFE no longer conducts any business except to conserve its assets.

15.  Murphy will not act jointly with Bartfield in respect of the business affairs of CFE.

16.  Murphy is, and has at all times since November, 2003, been engaged through Murphy Associates, which he organized and controls, in an enterprise in competition with CFE's business prior to the termination of CFE's business.

17.  Murphy pursued for himself and/or Murphy Associates business relations and opportunities which are the property of CFE and employed the assets and resources of CFE to conduct Murphy Associates' business.

18.  Murphy seized de facto control of CFE in 2003 and failed and refused to distribute to Bartfield his share of the profits and assets of CFE.

19.  By reason of the foregoing, Bartfield is entitled to judgment dissolving CFE and, under Court supervision, marshaling and collecting its assets, determining and paying its liabilities and distributing the remainder of its assets to Murphy and Bartfield.

AS AND FOR A CLAIM FOR RELIEF
AGAINST ALL DEFENDANTS EXCEPT CFE

20.  This is a claim for declaratory judgment pursuant to

28 U.S.C. § 2201 declaring the rights of each of Bartfield, Murphy, Murphy Associates and Standard in CFE's Book of Business, as such term is hereinafter defined, and the proceeds thereof and awarding to Bartfield his share of that Book of Business and its proceeds.

21.   Murphy Associates is, and at all times relevant hereto since November 2003 was, a corporation organized and existing under the laws of the State of New York, at all times relevant hereto existing under the control of Murphy and engaged in New York, _inter_ _alia_, in the business of acting as Managing General Underwriter for policies of medical stop-loss insurance for employers who indemnify their employees against medical expenses.

22.   Standard is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of New York and engaged in New York, _inter_ _alia_, in the business of providing medical stop loss insurance to employers who indemnify their employees against medical expenses.

23.   A Managing General Underwriter customarily acts as a general agent for an insurance carrier or carriers, including negotiation and issuance of insurance policies on behalf of carriers, and administers such policies, including collecting premium, adjusting and paying claims on behalf of carriers and distributing proceeds, all in return for compensation from the carrier in the form of commissions, administrative fees and

bonuses or profit participation.

24. As is described more fully hereinafter a case of actual controversy exists between Bartfield on the one hand and each of Murphy, Murphy Associates and Standard on the other.

25. Repeats and realleges each and every allegation contained in paragraphs 2 through 19 hereof with the same force and effect as if here set forth in full.

### NATURE OF THE BUSINESS

26. Medical stop loss insurance indemnifies employers ("Indemnifying Employers"), who themselves indemnify their employees, against medical expenses for catastrophic medical expenses in excess of a pre-determined levels of exposure.

### THE JOINT VENTURE AND ORGANIZATION OF CFE

27. In or about late October, 1999 Bartfield and Murphy entered into a joint venture (the "Joint Venture") to engage in the business of acting as Managing General Underwriter for insurance carriers who issue medical stop loss insurance policies and to share the profits and losses thereof.

28. On or about November 9, 1999 Bartfield and Murphy organized CFE and became members of CFE to carry out the Joint Venture.

29. From its inception up to the present time CFE has been fully qualified and licensed to act in the State of New York as a Managing General Underwriter for insurance carriers issuing

medical stop loss insurance policies in New York.

30. Bartfield and Murphy each contributed equal amounts to the capital of CFE and from CFE's November 9, 1999 inception until September, 2003 each contributed his services full time to the affairs of the Joint Venture and CFE without compensation except his interest in CFE, each marketing and administering medical stop loss insurance on behalf of CFE.

31. By reason of the foregoing, since November 9, 1999 and continuing to the present day Bartfield and Murphy each owed, and now owe fiduciary duties each to the other, the Joint Venture and CFE including the obligation of undiluted and undivided loyalty respecting the business and property of CFE.

THE CFE-STANDARD AGREEMENT

32. On or about May 1, 2000 CFE and Standard entered into a written agreement as amended on the same day pursuant to which Standard appointed CFE a non-exclusive independent Managing General Underwriter for Standard.

33. From May 1, 2000, other than administering the run-off from policies previously issued by CFE for another carrier, CFE placed policies only with Standard.

CFE'S BOOK OF BUSINESS

34. From on or about May 1, 2000 until December 9, 2003 CFE acting pursuant to the CFE-Standard Agreement created a valuable book of business ("CFE's Book of Business") of medical stop loss

insurance policies issued on behalf of Standard.

35. Approximately 40% of the policies comprising CFE's Book of Business expired in January of each year unless renewed prior to the expiration date.

36. At all times referred to herein, CFE had all rights to CFE's Book of Business and, as between CFE and Standard, Standard had no rights to it except through CFE.

37. The benefits (the "Opportunities") which flow under the American Agency System to the owner of a book of business, sometimes referred to in the insurance industry as "expirations", include

    A. knowledge when policies expire and the exclusive right to use that knowledge,

    B. knowledge of the particular needs and preferences of the insureds and the exclusive right to use that knowledge,

    C. knowledge of the identities of the parties who determine an Insuring Employer's decision to purchase insurance and the exclusive right to use that knowledge,

    D. the opportunity to develop good will with the insureds and

    E. the consequent ability directly to contact the appropriate insurance representative or administrator of an Indemnifying Employer to renew the medical stop loss

insurance policy and thereby earn future commissions and administrative fees.

38. Upon the dissolution of CFE, CFE's Book of Business and the Opportunities it carries with it will devolve upon Bartfield and Murphy as the owners of CFE.

39. At all relevant times had the CFE-Standard Agreement been terminated, or had CFE been dissolved and its Book of Business distributed to its members, the Joint Venture, CFE and/or its members, including Bartfield, would have had substantial business opportunities to deal with and profit from CFE's Book of Business, including sale of CFE's Book of Business, or parts thereof, to Standard or to another MGU, and/or affiliations and arrangements with different carriers or different Managing General Underwriters.

ALLEGATIONS SPECIFIC TO MURPHY

40. Without just reason Murphy caused Standard to terminate the CFE-Standard Agreement.

41. Murphy prevented Bartfield from taking steps to preserve his share of CFE's Book of Business, to write renewals of his share of such business or to move his share of CFE's Book of Business to a different Managing General Underwriter or carrier.

42. Murphy organized Murphy Associates to act as a Managing General Underwriter and receive all or part of CFE's Book of

Business.

43. Murphy solicited the renewal business of the Indemnifying Employers who comprised CFE's Book of Business to become Standard policy holders through Murphy Associates and moved a part of CFE's Book of Business to Murphy Associates.

44. In violation of his fiduciary duties to CFE and Bartfield Murphy used the facilities of CFE, including its leased space, its office equipment, telephones and furniture and its employees, to carry out the business of Murphy Associates in competition with CFE.

ALLEGATIONS SPECIFIC TO MURPHY ASSOCIATES

45. At all relevant times Murphy Associates was the nominee of Murphy to receive and hold interests in CFE's Book of Business converted by Murphy.

46. At all relevant times Murphy Associates was a knowing participant in Murphy's breach of his fiduciary duty to CFE, the Joint Venture and Bartfield.

47. Murphy Associates knowingly received and held property in which the Joint Venture, CFE and Bartfield had an interest knowing that it received the property in violation of Murphy's breach of his fiduciary duty to the Joint Venture, CFE and Bartfield.

48. Murphy Associates paid no consideration for the property which it received in violation of Murphy's breach of his

fiduciary duty to the Joint Venture, CFE and Bartfield and was not a bona fide purchaser.

## ALLEGATIONS SPECIFIC TO STANDARD

49. At all relevant times in 2003 Standard knew or should have known that CFE's Book of Business was the sole property of CFE.

50. At all relevant times in 2003 Standard knew or should have known that CFE's Book of Business had substantial value.

51. At all relevant times in 2003 Standard knew or should have known that Murphy and Bartfield were each 50% members of CFE and Murphy consequently owed fiduciary duties to CFE and Bartfield.

52. At all relevant times in 2003 Standard knew or should have known that Bartfield intended to preserve his share of CFE's Book of Business and its proceeds.

53. At all relevant times in 2003 Standard knew or should have known that approximately 40% of the policies that comprised CFE's Book of Business were due to expire in January 2004 and required renewal reasonably before January 2004 if the business were to continue.

54. Upon Murphy's announcement to Standard of Murphy's intent to part company with Bartfield, Standard threatened (the "Threat") to withhold significant CFE's Opportunities under the CFE-Standard Agreement unless Bartfield joined Murphy's

announcement.

55. Upon Bartfield's consequent joinder pursuant to the Threat in Murphy's announcement of his intent to part company with Bartfield, Standard terminated the CFE-Standard Agreement effective December 9, 2003.

56. After encouraging Bartfield to apply to act as a Managing General Underwriter for Standard, Standard failed to consider Bartfield's application.

57. Standard Murphy Associates a managing general underwriter of Standard.

58. Standard induced Bartfield to refer his business sources directly to Standard or structure his business sources' intersts in medical stop loss insurance around Standard's unique rate-benefit structure by

    A.  instructing Bartfield and his staff respecting Standard's 2004 rate-benefit structure,

    B.  assuring Bartfield that Standard would advise Bartfield's business sources of its intent soon to entertain Bartfield's application to act as its managing general underwriter, and

    C.  assuring Bartfield that Standard would not take any part of CFE's Book of Business for itself.

("Standard's Assurances")

59. An intended effect of Standard's Assurances was to

establish a relation of confidence in which Bartfield was invited and expected to trust Standard and to

    A.  lull Bartfield into deferring action to find a new carrier for Bartfield's share of CFE's Book of Business,

    B.  prevent Bartfield from realizing that Standard intended to take Bartfield's share of CFE's Book of Business for itself, and

    C.  cause Bartfield to lead CFE's business sources to adopt and tie their prospective 2004 business to Standard and its rate structure for medical stop-loss insurance,

and Standard's Assurances had those effects.

60. In reliance on the Assurance, Bartfield commenced referring his business sources directly to Standard and providing rate quotes to his business sources respecting medical stop-loss insurance based upon Standard's 2004 rate structure.

61. In November, 2003 Standard refused to consent that Bartfield affiliate himself with any other managing general underwriter for Standard.

62. The intended and actual effect of Standard's foregoing acts was to render it impossible for Bartfield to preserve his share of CFE's Book of Business for himself.

63. Standard converted parts of the Book of Business for itself and to others of its managing general underwriters and thereby preserved those parts of CFE's Book of Business as

business for Standard.

64. Since, as Standard well knew, approximately 40% of CFE's Standard in-place medical stop-loss insurance policies expired in January 2004 and required renewal by then if CFE's Book of Business were to be preserved, and Standard had commenced dealing directly with CFE's Producers and could therefore undercut CFE's pricing, Bartfield no longer in November, 2003 had the ability to arrange another managing general underwriting position to save Bartfield's share of CFE's Book of Business for himself as a distributee of CFE.

65. By reason of the foregoing, Standard knowingly aided and abetted Murphy's breach of his fiduciary duty to CFE and Bartfield.

66. By reason of the foregoing, Standard knowingly received and held property in which the Joint Venture, CFE and Bartfield had an interest with knowledge that it received the property in violation of the CFE-Standard Agreement and the customs and practices of the insurance industry in New York.

67. Standard obtained possession of part of the Book of Business for itself without paying the fees it would normally have paid to CFE and Standard was not a bona fide purchaser of any part of CFE's Book of Business.

68. Bartfield performed his foregoing services in good faith and in the reasonable expectation of compensation therefor.

69. Murphy, Murphy Associates and Standard were enriched by the foregoing occurrences.

70. Murphy's, Murphy Associates' and Standard's enrichment was at Bartfield's expense.

71. The circumstances are such that in equity and good conscience Murphy, Murphy Associates and Standard should return to Bartfield the distributive benefits properly allocable to Bartfield upon the dissolution of CFE but were wrongfully received at Bartfield's expense by each of Murphy, Murphy Associates and Standard and should pay to Bartfield such sums as they would have paid to Bartfield had they acknowledged Bartfield's interest in CFE's Book of Business.

## PUNITIVE DAMAGES

72. Murphy's, Murphy Associates' and Standard's acts in violation of their respective duties to Bartfield, the Joint Venture and CFE were gross, wanton and deliberate and evinced a reckless disregard for Bartfield's, the Joint Venture's and CFE's rights, and, moreover, attained that high degree of moral culpability required to justify an award of punitive damages.

## REMEDY

73. By reason of the foregoing Bartfield is entitled to declaratory judgment against Murphy, Murphy Associates and Standard declaring the interest of each of Bartfield, Murphy, Murphy Associates and Standard in CFE's Book of Business and the

proceeds thereof and pursuant to 28 U.S.C. § 2202 awarding to Bartfield against each of Murphy, Murphy Associates and Standard separate judgments in the amount of the difference between the value of CFE's Book of Business which each has received in excess of the value of the share of CFE's Book of Business which is fairly allocable to each.

  WHEREFORE, Bartfield demands judgment

  (A) pursuant to Article 7 of the New York Limited Liability Company Law dissolving CFE and, under Court supervision, marshaling and collecting CFE's assets, determining and paying CFE's liabilities and distributing the remainder to Murphy and Bartfield as may be appropriate and

  (B) (i) pursuant to 28 U.S.C. § 2201 declaring the interest of each of Bartfield, Murphy, Murphy Associates and Standard in CFE's Book of Business and the proceeds thereof and

  (ii) pursuant to 28 U.S.C. § 2202 awarding to Bartfield against each of Murphy, Murphy Associates and Standard separate judgments in the amount of the difference between the value of CFE's Book of Business each has received in excess of the value of the share of CFE's Book of Business fairly allocable to each and/or in the amount that each of Murphy, Murphy Associates and Standard would

have paid to Bartfield had they acknowledged Bartfield's interest in CFE's Book of Business and granting such other and further relief as the Court may deem appropriate under the circumstances,

together with such other relief as the Court may deem appropriate under the circumstances, punitive damages and the costs and disbursements of this action.

Dated: New York, New York
       August 24, 2006

                                                                        _____
John M. Burns, III (JB9973)
   Attorney for plaintiff
33 Greenwich Avenue
New York, New York 10014
   (212) 360-1990